IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                **Case No. 09-40077-01/02/04-RDR**

TIMOTHY WAYNE STEIN II,
EDDIE RAUL COLLAZO, JR.
and ANTHONY MAURICE HODGES,

        Defendants.

_____

<u>**MEMORANDUM AND ORDER**</u>

This matter is presently before the court upon the pretrial motions filed by the defendants. Having heard argument and evidence, the court is now prepared to rule.

The indictment in this case contains one count against four defendants: Timothy Wayne Stein II; Eddie Raul Collazo, Jr.; Reginald Terrance Stewart; and Anthony Maurice Hodges. The defendants are charged with possession with intent to distribute one kilogram or more of phencyclidine (PCP) in violation of 18 U.S.C. § 841(a)(1). Defendant Stewart has entered a plea of guilty. The remaining defendants have filed pretrial motions.

Defendant Hodges has filed the following motions: (1) motion for severance; (2) motion for disclosure of any and all deals made by the government with cooperating witnesses; (3) motion to produce investigative officers' rough notes; (4) motion to preclude creation of "snitch" testimony; (5) motion for disclosure of intent

to introduce Rule 404(b) evidence by government; (6) motion in limine and objections to Rule 404(b) evidence; and (7) motion to produce probation records and urine analysis. Defendants Stein and Collazo have each filed a motion to suppress.

**MOTIONS TO SUPPRESS**--Stein and Collazo

Defendant Collazo seeks suppression of all evidence discovered and seized as a result of the traffic stop on July 21, 2009. He asserts that he was illegally detained and did not voluntarily consent to any search. He further seeks to suppress any subsequent statements as fruits of the Fourth Amendment violations. Defendant Stein has also filed a motion to suppress in which he joins in the factual allegations and legal arguments raised in Collazo's motion.

Having carefully reviewed the evidence presented at the hearing on these motions, the court is now prepared to issue the following findings of fact and conclusions of law.

*Findings of Fact*

1. On July 21, 2009, Robert Youse, an officer with the Topeka Police Department (TPD), was monitoring traffic on Interstate 70 west of Topeka. Officer Youse is a member of the TPD drug interdiction unit. He has worked for the TPD for 18 years. He was employed by the Kansas Highway Patrol for a year prior to his employment with TPD. He is an experienced officer in the area of drug interdiction.

2. At approximately 8:44 a.m., Officer Youse observed a red

Volkswagen sedan pass him traveling eastbound. He noticed that the car had no license plate. He activated his emergency lights in order to pull the car over. His vehicle was equipped with a video camera that recorded the events of the stop including audio.

3. The Volkswagen immediately pulled to the side of the road and stopped near the Auburn exit on I-70, which is several miles from downtown Topeka. Officer Youse approached the vehicle on the driver's side. He noticed two white males in the car. He asked the driver for his driver's license and said, "You don't have any tag, man." Someone in the car said, "It's taped to the window." The temporary tag was then handed to Officer Youse. Officer Youse then asked for proof of insurance. A document on proof of insurance was then handed to him. Someone in the car explained that the car belonged to his girlfriend, had been purchased by her in California, and the temporary tag had been obtained in Las Vegas, Nevada.

4. Officer Youse thought he smelled the odor of burnt marijuana as he leaned down to the driver's side window. He also thought the circumstances concerning the ownership of the car and the temporary tag were unusual. He testified at the hearing that his prior experience showed that individuals transporting drugs often used third-party vehicles to do so.

5. Officer Youse returned to his car and then went back to the Volkswagen. He asked for the passenger's identification. The

passenger provided his driver's license.  The driver had provided a driver's license from Nevada with the name Timothy W. Stein II. The passenger provided a Florida driver's license with the name Eddie R. Collazo, Jr.

6.  From the outset of the encounter, Officer Youse found the two men to be overly friendly and talkative.  Based upon his training and experience, he viewed such conduct as a sign of nervousness.

7.  At 8:47 a.m., Officer Youse returned to his car.  He then called his dispatcher and asked for backup officers.  He wanted to investigate further because he had concerns about the odor he had smelled, as well as the unusual details concerning the ownership of the vehicle.  He thought that additional officers would be necessary for his safety because he was outnumbered and the individuals in the car looked young and in good shape.  He began examining the documents that had been given to him.  He also began doing some paperwork, including making notes on his run sheet which is a record of his daily activities.

8.  At 8:52 a.m., Officer Youse contacted his dispatcher and asked for information on the validity of the occupants' drivers' licenses as well as information on their criminal history.  Backup officers arrived a few minutes later.  At 8:57 a.m., Officer Youse explained to the backup officers that he thought the car and the passengers were "a little weird" and "a little strange."  He

further told them he thought he "smelled something up there."

9.    At 8:58 a.m., Officer Youse's dispatcher informed him that the drivers' licenses were valid and there were no warrants on the car's passengers.  She further noted she was still waiting on their criminal history information.

10.    Officer Youse exited his vehicle again at 9:00 a.m.  He again talked with the occupants of the Volkswagen.  He asked them again who owned the car.  They once again explained that the car belonged to Collazo's girlfriend.  Officer Youse told them he was waiting on computer checks and asked them what they did for a living.  They told him they were on vacation.  After some brief additional conversation, Officer Youse returned again to his car.

11.    At 9:01 a.m., Officer Youse told the backup officers that the car belonged to a girlfriend.  He again told them that "something is not right."  He informed them that he believed the occupants of the car were headed to North Carolina, but he was not sure.  Officer Youse returned to the Volkswagen to find out where Stein and Collazo were going.  They told him they were headed to Kansas City, which is approximately 60 miles to the east on I-70.

12.    Officer Youse returned to his car where the dispatcher informed him of the occupants' criminal history.  Officer Youse told the backup officers that he intended to get them out of the car.

13.    At 9:03 a.m., Officer Youse asked Stein to exit the

5

vehicle.  Officer Youse then returned his documents to him.  He told Stein he had no problem but that he had been concerned about the fact that he had no license plate and he "couldn't figure it out."  Officer Youse did not give Stein a citation or warning. Officer Youse again approached the Volkswagen and handed Collazo his documents.  He explained to Collazo why he had stopped the car.

14.  Officer Youse began to return to his vehicle.  As Officer Youse went by Stein, who was still standing by the side of the road, he reached out and shook Stein's hand and told him, "Thanks a lot."  Officer Youse then took a step towards his vehicle and asked Stein if he could ask him a question.  Stein said yes. Officer Youse then asked him if he had anything illegal in his car. Stein said no.  Officer Youse then asked if he could search the car.  Stein said, "There is no reason to."  Officer Youse began to detail his concerns about the circumstances of the stop.  Stein interrupted him and indicated that since it was Collazo's car, then Collazo should make the decision about allowing a search.

15.  Officer Youse again approached the Volkswagen and asked Collazo if he could ask him a question.  Collazo said yes.  Officer Youse then asked if Collazo had anything illegal in the car. Collazo said no.  Officer Youse responded by asking if he could search the car.  Collazo said, "Yes, I have no problem with that."

16.  Officer Youse then patted down Stein and Collazo.  He then asked if either men had any personal use drugs in the car.

Stein responded he did not. Collazo said that he might have had some earlier, but that it had been smoked. Collazo and Stein were watched by the backup officers while Officer Youse began a search of the Volkswagen.

17. During this entire encounter, Officer Youse questioned Stein and Collazo in a normal, conversational tone. He never raised his voice or commanded their attention. He also never touched his firearm, which he was wearing.

18. At 9:07 a.m., Officer Youse began a search of the vehicle. He initially believed that the vehicle might contain some contraband in a hidden compartment in the front of the car because he thought the air flow from the vents was restricted. During a search of the glove box, Officer Youse found a small amount of what appeared to be marijuana. Collazo admitted that the marijuana belonged to him. Officer Youse later discovered a 5-gallon red gas can in the trunk of the car. The lid on the can was so tight that it could not be opened. Officer Youse found the presence of this gas can unusual because of its size. He noted that some people traveled with a small one-gallon gas can but he had encountered few who traveled with such a large can.

19. At 9:28 a.m., Officer Youse directed Stein and Collazo to follow him to the TPD garage. He told them he wanted to take a closer look at the car because "something's not right."

20. The gasoline can was later discovered to contain PCP.

Stein and Collazo later made statements of their involvement in the transportation of the PCP.

*Conclusions of Law*

1.  A traffic stop is a seizure within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." <u>Delaware v. Prouse</u>, 440 U.S. 648, 653 (1979). A traffic stop is reasonable if (1) the officer's action was justified at its inception, and (2) the officer's action was reasonably related to the circumstances which justified the stop in the first place. See <u>United States v. Bradford</u>, 423 F.3d 1149, 1156 (10th Cir. 2005).

2.  An officer conducting a traffic stop may request a driver's license, vehicle registration, run a computer check, and issue a citation. See <u>United States v. Zubia-Melendez</u>, 263 F.3d 1155, 1161 (10th Cir. 2001). Once an officer completes these tasks, the officer must allow the driver to proceed on his way without being subject to further delay by police for additional questioning. See <u>id</u>.; see also <u>United States v. Edgerton</u>, 438 F.3d 1043, 1047 (10th Cir. 2006). Absent a consensual encounter, further detention for purposes of questioning unrelated to the initial traffic stop is permissible if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. See <u>Zubia-Melendez</u>, 263 F.3d at 1161. Reasonable suspicion exists where an officer has a

"particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). We determine whether reasonable suspicion exists from the totality of the circumstances. See id.

3. Defendant Collazo asserts that he was illegally detained and did not voluntarily consent to any search. He does not challenge the basis of the initial traffic stop for the failure to display a license tag, but contends that the resulting detention was improperly long and that any subsequent consent was not voluntary. He further seeks to suppress any subsequent statements as fruits of the Fourth Amendment violations. Defendant Stein joins in the factual allegations and legal arguments raised by Collazo.

4. The first inquiry usually involves the validity of the initial stop. The defendants, however, have not raised any issues about the reasonableness of the initial stop. The facts before the court indicate that Officer Youse did have probable cause to stop the defendants' vehicle because a license tag was not displayed.

5. The court must next turn to consideration of whether the entire stop was reasonable. Thus, we must determine whether Officer Youse had reasonable suspicion to detain the defendants longer than necessary to issue a citation. For the purposes of deciding the defendants' motions, the court shall assume that Officer Youse took longer than necessary to determine if a citation

should be issued. We find it unnecessary to reach this issue because it is clear that Officer Youse had reasonable suspicion to detain the defendants for a longer period for investigative purposes. In the absence of valid consent, an officer may expand a traffic stop only if there exists an "objectively reasonable and articulable suspicion" that criminal activity has occurred or is occurring. United States v. Williams, 271 F.3d 1262, 1268 (10th Cir. 2001). A determination of whether an investigative detention is supported by objectively reasonable suspicion of illegal activity turns on a review of the totality of the circumstances. Id. In doing so, the court must consider the following:

> [W]e "judge the officer's conduct in light of common sense and ordinary human experience," United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997), and we accord deference to an officer's ability to distinguish between innocent and suspicious actions. [United States v.] Wood, 106 F.3d [942] at 946 [(10th Cir. 1997)]. Reasonable suspicion, however, may not be derived from inchoate suspicions and unparticularized hunches. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Id.

6. The court finds from a review of the totality of the circumstances that Officer Youse did have reasonable suspicion to detain the defendants longer than necessary to issue or consider the issuance of a citation. The reasonable suspicion arose from the smell of marijuana that Officer Youse believed was emanating from the vehicle. This factor, coupled with the unusual circumstances surrounding the use of the car and the nervousness of

10

the occupants, constituted a change in circumstances that suggested the occupants were engaged in illegal activity and authorized further detention so Officer Youse could investigate. See, e.g., United States v. Hill, 199 F.3d 1143, 1148 (10th Cir. 1999) (officer had "reasonable suspicion that criminal activity was occurring based upon the PCP smell emanating from Mr. Hill's bag"); United States v. Ozbirn, 189 F.3d 1194, 1200 (10th Cir. 1999) (smell of raw marijuana alone provided reasonable suspicion for further detention and questioning); United States v. Downs, 151 F.3d 1301, 1303 (10th Cir.1998) (odor of raw marijuana alone may provide probable cause to search bag), cert. denied, 526 U.S. 1078 (1999).

7. Next, we turn to the consent issues. "In determining whether a driver and police officer are engaged in a consensual encounter in the context of a traffic stop, there are few, if any, bright-line rules." United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997). Rather, we must consider "the totality of the circumstances in a particular case." Id. at 814. While the return of documents, such as a driver's license or other personal papers, is a prerequisite to an encounter becoming consensual, the Tenth Circuit has acknowledged it "is not always sufficient to demonstrate that an encounter becomes consensual." Id.; see also United States v. Gregory, 79 F.3d 973, 979 (10th Cir. 1996). Accordingly, even after the officer returns a driver's papers, the encounter may not be consensual where "there was evidence of a

'coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled.'" <u>Elliott</u>, 107 F.3d at 814 (quoting <u>United States v. Turner</u>, 928 F.2d 956, 959 (10th Cir. 1991)). However, the ultimate test is whether "a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." <u>United States v. McKneely</u>, 6 F.3d 1447, 1451 (10th Cir. 1993).

8.   The court finds that Officer Youse did return all the necessary documentation to the defendants prior to asking them if he could ask a few more questions.   Defendant Collazo contended that Officer Youse never returned his driver's license.   The court found the testimony of Officer Youse that he did return Collazo's driver's license prior to asking him for consent to search credible.   Moreover, the video recording of the traffic stop shows Officer Youse handing Collazo some documents.   In sum, the court finds that all the necessary documents were returned to the defendants before Officer Youse made any attempt to talk with them further.

9.   The court believes that the ensuing encounter between Officer Youse and the defendants was consensual.   After Officer Youse returned the various documents to the defendants, he shook Stein's hand and told him, "Thanks a lot."   Officer Youse then took

one step towards his patrol vehicle. He then asked Stein in a conversational tone if he could ask him another question. Stein said yes. Officer Youse did not physically touch Stein or use a commanding tone or voice. The court finds there was voluntary cooperation by Stein to non-coercive questioning by Officer Youse. The same can be said for Officer Youse's subsequent encounter with Collazo. The court concludes that the totality of the circumstances indicates that the encounter after the return of the driver's licenses was consensual.

10. With the conclusion that the encounter was consensual, we must consider whether Collazo consented to a search of the car. The voluntariness of consent must be determined from the totality of the circumstances, and the government bears the burden of proof on the issue. <u>Zubia-Melendez</u>, 263 F.3d at 1162. The government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given. <u>Id</u>.

11. The facts support the conclusion that consent to search the Volkswagen was voluntarily given. There is no evidence of any coercion or duress. There was no evidence that Officer Youse threatened Collazo, used a hostile voice, touched him or displayed his gun. Collazo quickly agreed to allow Officer Youse to search the car.

12. Given the aforementioned determinations, the court finds

that Officer Youse lawfully stopped the car in which the defendants were passengers. The court further finds that the subsequent detention and searches were lawful. Accordingly, the court shall deny defendants' motions to suppress.

**MOTION TO SEVER**--Hodges

Defendant Hodges seeks to sever his trial from that of the co-defendants. He contends that (1) his alleged possession of the PCP is different from that of his co-defendants, (2) the evidence may be difficult for the jury to compartmentalize with respect to the different defendants resulting in prejudice to him, (3) the statements of non-testifying co-defendants may be offered at trial in violation of his right of confrontation as set forth in <u>Bruton v. United States</u>, 391 U.S. 123 (1968), and (4) the exercise of his right not to testify may be subject to comment from any of his co-defendants who do testify.

Multiple defendants may be tried together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). If, however, a joint trial "appears to prejudice a defendant,. . . the court may order separate trials of counts [or] sever the defendants' trials." Fed.R.Crim.P. 14(a). Joint trials of defendants who are charged together are preferred because "they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of

inconsistent verdicts." <u>United States v. Hall</u>, 473 F.3d 1295, 1301 (10th Cir. 2007) (quotation omitted). Severance is discretionary and should be granted only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Id</u>. at 1302 (quotation omitted).

The first two arguments raised by the defendant suggest that he believes that the evidence against the other defendants is so different that he will be prejudiced. He contends that the jury will not be capable of evaluating the evidence independently against him. The court is not persuaded that the defendant is entitled to severance based upon these reasons. At this point, the court is certainly not convinced that the defendant has adequately demonstrated the requisite prejudice. This case does not appear to be so intricate or complex as to render the jury unable to segregate the evidence associated with each defendant's individual actions.

The court is also not persuaded by the defendant's argument that the exercise of his right not to testify may be subject to comment from any of his co-defendants who do testify. The court believes that this issue can be handled at trial through appropriate rulings and the instructions given.

Finally, we turn to the <u>Bruton</u> issue raised by the defendant. We initially note that defendant Stewart has entered a guilty plea

which eliminates any potential <u>Bruton</u> problem that might arise from the admission of his statements against him at any joint trial.

The government contends that the introduction of the statements made by Collazo and Stein will not violate <u>Bruton</u> if the statements do not reference a co-defendant or if they have been adequately redacted to remove any reference to a co-defendant. The government contends that Hodges has not made any showing of any specific <u>Bruton</u> problem at this time.

In <u>Bruton</u>, the Supreme Court held that:

> a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.

<u>Richardson v. Marsh</u>, 481 U.S. 200, 201-02 (1987); <u>Cruz v. New York</u>, 481 U.S. 186, 187-88 (1987). <u>Bruton</u> applies, however, only if the statement expressly implicates the defendant. <u>See Richardson</u>, 481 U.S. at 208. "<u>Richardson</u> allows a court, despite the Confrontation Clause, to admit the confession of a non-testifying co-defendant [that does not expressly implicate the defendant]. The confession must be (i) redacted to eliminate any reference to the non-confessing defendant, and (ii) accompanied by an appropriate limiting instruction that the confession is to be considered only against the confessor." <u>Fowler v. Ward</u>, 200 F.3d 1302, 1307 (10th Cir. 2000) (citing <u>Richardson</u>, 481 U.S. at 211), overruled on other grounds, <u>Moore v. Marr</u>, 254 F.3d 1235, 1239 (10th Cir. 2001). "This

16

is clearly a two-pronged requirement; a redaction, no matter how perfect, nevertheless requires an appropriate limiting instruction immediately following the admission of the confession." <u>Id</u>.

As correctly pointed out by the government, the defendant has not identified a specific <u>Bruton</u> problem. If such a problem exists, the defendant can raise it at trial. At this time, the defendant's motion for severance shall be denied.

**MOTION TO REVEAL GOVERNMENT AGREEMENTS**–Hodges

Defendant Hodges seeks an order compelling the government to reveal all deals or agreements that have been made in exchange for cooperation with the prosecution of this case. The defendant seeks this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). The government has indicated that it is aware of obligations under <u>Brady</u> and <u>Giglio</u> and their progeny. The government has further indicated that "[t]o date, while there has been cooperation with respect to the investigation underlying the instant case from each of the other defendants, apart from defendant Hodges, there are currently no promises, agreements, understandings, or arrangements between the government and any of the defendants or any prosecution witness." The government states it will make prompt disclosure of any promises, agreements, understandings or arrangements that may arise in the future as part of its existing discovery procedure and obligation.

Given the government's response, the court shall deny defendant's motion as moot.

**MOTION TO REQUIRE INVESTIGATIVE OFFICERS TO RETAIN ROUGH NOTES**--Hodges

Defendant Hodges seeks an order requiring the investigative officers in this case to retain their rough notes. The government has indicated that it communicated to the investigative officers at the time of its response to the defendant's motion that all notes and records of their activities related to this investigation that are still in existence should be retained until the conclusion of the case.

At the hearing, the defendant requested that the government provide these notes prior to trial. The court believes that this procedure will save some time at trial. Accordingly, the court shall direct that notes be provided to the defendant at least five (5) days prior to trial.

**MOTION TO PRECLUDE CREATION OF "SNITCH" TESTIMONY**--Hodges

Defendant seeks an order "taking measures to ensure that no jailhouse snitches or other suspect informants are created in this case to manufacture evidence for the government." The defendant argues that "it is likely" that the government will try to find jailhouse informants against him because it has relied upon informants to support the charge contained in the indictment against him. He points out that he has no intention of talking to anyone but his attorney and others under his supervision about the

18

facts of this case.  The government has responded that "it is aware of its obligations when dealing with a defendant who invoked his rights to silence and counsel, and has no plan, desire, or intention of seeking to circumvent this defendants rights in violation of those obligations."

As pointed out by the government, the defendant has provided no authority for this request.  The court is unaware of any authority that would allow it to grant this preemptive request.  If a jailhouse informant comes forward to testify, the court will at that time consider whether the testimony will be allowed. Accordingly, this motion shall be denied.

**MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO DISCLOSE WHETHER IT INTENDS TO INTRODUCE RULE 404(b) EVIDENCE AT TRIAL**--Hodges

The defendant seeks an order directing the government to provide notice of its intent to use Fed.R.Evid. 404(b) evidence at trial.  The government has indicated that it has not made a determination of the specific nature of any Rule 404(b) evidence it will seek to present at this time.  The government further indicates that it does intend to provide reasonable notice in advance of the trial.

The court shall grant the defendant's motion and direct the government to provide notice within twenty days of today's date. The parties shall file motions in limine at least 10 days prior to trial.

**MOTION IN LIMINE AND RULE 404(B) OBJECTIONS**--Hodges

The defendant seeks an order precluding the government from introducing into evidence at trial or during pretrial hearings or any other stage of this proceeding any Rule 404(b) evidence. The defendant argues that this evidence should be excluded as irrelevant and inadmissible as evidence of other crimes, wrongs or acts of the defendant. The government contends that this motion is premature and should therefore be denied. The court agrees with the government. The defendant can file another motion in limine once he receives notice from the government concerning what Rule 404(b) evidence it intends to introduce.

**MOTION FOR PRODUCTION OF PROBATION RECORDS AND URINE ANALYSIS**--Hodges

The defendant seeks an order granting him access to all probation records and urine analysis or other drug testing conducted on him during a term of supervised release presently being served in the United States Court for the District of Kansas. The government takes no position on this motion since the records belong to the United States Probation Office, an arm of this court. The government believes this matter should be left to the discretion of the court.

Some background is necessary to understand this request. According to defendant Hodges, defendant Stewart has informed the government that on July 19, 2009, prior to his arrest in this case on that date, he was at the home of defendant Hodges. While there, he smoked marijuana with Hodges and Hodges then offered him $500 to

pick up a gas can at a local Kentucky Fried Chicken parking lot. Stewart was arrested when he went to pick up the can. At that time, defendant Hodges was on supervised release and reporting to the Kansas City, Kansas federal probation office for regular urine analyses. In the instant motion, defendant Hodges denies ever seeing Stewart on the night of the arrest, and further denies speaking to Stewart that evening. Thus, he denies he was smoking marijuana with Stewart prior to Stewart's arrest on these charges. He seeks access to the records so he can impeach the statements made by Stewart. He asserts that the records are in the "exclusive control of the government," and he needs access to them in order to prepare a defense.

The court is not sure that defendant has the facts entirely correct since the indictment indicates that the traffic stop and the subsequent events occurred on July 21, 2009. In addition, contrary to the representation of the defendant, the "government" does not possess these records. However, the probation office, an arm of the court, does possess the records. The court finds, in the interest of justice, that the records should be disclosed to the defendant and the government. The court shall direct the probation office to provide the specimen dates and results for defendant Hodges for the period from June to August 2009 in United States v. Hodges, No. 98-20044.

**MOTION FOR ORDER REGARDING DISCOVERY**--Hodges

Early in this case, defendant Hodges filed a pro se motion to receive copies of the discovery in this case. His appointed counsel had signed an agreement with the government that his attorney would get all of the discovery in this case if he agreed not to provide copies of it to the defendant. In the pro se motion, the defendant contended that he was not able to adequately prepare for his case without possession of the discovery. He noted that the time allotted for visits with his attorney did not provide sufficient time to consider the discovery. At the hearing on the instant motions, his present counsel, who is retained, renewed this motion. He noted that he had acquiesced to the prior agreement with the government in order to gain access to the discovery, but he requested relief from that agreement for the reasons previously stated in the defendant's pro se motion. The government objected to the court providing any relief from this agreement. The government indicated that the agreement between it and the defendant was a standard agreement that was instituted to prevent discovery documents from being disseminated around the institutions used to hold prisoners.

The court shall deny the defendant's motion. The court believes that the security concerns noted by the government outweigh the defendant's right to possession of the documents. The court believes that the defendant and his counsel can arrange for sufficient time to review the discovery in this case. The court

notes that the discovery in this case, at least as represented by counsel, is not voluminous.

**IT IS THEREFORE ORDERED** that the motions to suppress of defendants Collazo and Stein (Doc. ## 85 and 87) be hereby denied.

**IT IS FURTHER ORDERED** that the following motions of defendant Hodges be denied: <u>pro</u> <u>se</u> motion for access to discovery (Doc. # 47), motion for severance (Doc. # 59), motion for disclosure of any deals made by the government with cooperating witnesses (Doc. # 61), motion in limine to preclude creation of "snitch" testimony (Doc. # 65), and motion in limine and objections to Rule 404(b) evidence (Doc. # 69).

**IT IS FURTHER ORDERED** that defendant Hodges' motion for disclosure of intent to introduce Rule 404(b) evidence by government (Doc. # 67) be hereby granted. The government shall provide notice of intent to introduce Rule 404(b) evidence within twenty days of today's date. The parties shall file motions in limine at least ten (10) days prior to trial.

**IT IS FURTHER ORDERED** that defendant Hodges' motion to produce investigative officers' rough notes (Doc. # 63) be hereby granted. The government shall produce any rough notes that exist at least five (5) days prior to trial.

**IT IS FURTHER ORDERED** that defendant Hodges' motion for production of probation records and urine analysis (Doc. # 70) be hereby granted. The probation office shall produce the records of

defendant Hodges' specimen dates and results for the period from June to August 2009 in <u>United States v. Hodges</u>, No. 98-20044 to the defendant and the government within ten (10) days of the date of this order.

**IT IS SO ORDERED.**

Dated this 10th day of March, 2010 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge